Strafford
No. 2006-791

FARM FAMILY CASUALTY INSURANCE COMPANY AS SUBROGEE OF MARC JANETOS AND DEBORAH JANETOS

v.

TOWN OF ROLLINSFORD

Argued: April 19, 2007
Opinion Issued: July 17, 2007

*Mittelholzer & Dibble, PLLC,* of Newmarket (*Stephen J. Dibble* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman P.C.,* of Concord (*Daniel J. Mullen* and *Stephen A. Duggan* on the brief, and *Mr. Mullen* orally), for the defendant.

BRODERICK, C.J. The plaintiff, Farm Family Casualty Insurance Company (Farm Family), appeals an order of the Superior Court (*Mohl,* J.) dismissing its subrogation action against the defendant, Town of Rollinsford (town). We affirm.

In its writ of summons, Farm Family alleged the following facts. The Rollinsford Fire Department (RFD) responded to a fire in a garage owned by Farm Family's insureds, Marc and Deborah Janetos. While fighting the fire, RFD personnel cut off electrical power to both the garage and the main structure of the insureds' home. After they extinguished the blaze, firefighters restored electrical service, but did not electrically isolate the damaged portion of the structure, contrary to applicable safety standards.

Two hours after the RFD left the scene, an electrical fire broke out in a different part of the garage. The second fire was caused by the RFD's failure to electrically isolate the damaged portion of the structure, and it destroyed both the garage and the main structure of the home.

At the time of the fire, the Janetoses were insured by Farm Family. They made a claim on their policy, which Farm Family paid. As subrogee, Farm Family brought a negligence action against the town.

In the trial court, the town moved to dismiss, arguing, among other things, that it was protected by RSA 507-B:2 & :5 (1997), which allow suits against municipalities only for injuries "arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises," RSA 507-B:2. Regarding the application of RSA 507-B:2, the trial court explained:

> According to a plain and ordinary interpretation of the meaning of the term "all premises" and construing the term consistent with its context, the court finds the term "all premises" refers to premises owned, occupied, maintained, or operated by a municipality.
>
> Assuming the facts in the light most favorable to the plaintiff, the fire department did not own, occupy, maintain, or operate the Janetos' home or garage at any time on [the day of the fire]. While the fire department may have arrived at the Janetos' home to extinguish the existing fire, this situation does not qualify as "occupation" or "maintenance" of the home under this statute. *See* WEBSTER'S [NEW COLLEGIATE DICTIONARY] at 804, 702 [(9th ed. 1984)] ("occupy" means "to reside in as an owner or tenant," and "maintain" means "to keep in existing state" or "preserve from failure or decline"). Therefore, RSA 507-B:2 does not give the plaintiff authority to pursue the present action.

Relying upon this determination, the trial court granted the defendant's motion to dismiss. This appeal followed.

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged by the plaintiff and construe all reasonable inferences in the light most favorable to the plaintiff. *Paul v. Sherburne*, 153 N.H. 747, 749 (2006). If the facts do not constitute a basis for legal relief, we will uphold the granting of a motion to dismiss. *Id.*

The question before us is whether, based upon the facts pled by Farm Family, the town was subject to liability under RSA chapter 507-B (1997 & Supp. 2006). That chapter provides that "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury or

property damage except as provided by this chapter or as is provided or may be provided by other statute." RSA 507-B:5. It further provides:

> A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises; provided, however, that the liability of any governmental unit with respect to its sidewalks, streets, and highways shall be limited as provided in RSA 231 and the liability of any governmental unit with respect to publicly owned airport runways and taxiways shall be limited as set forth in RSA 422.

RSA 507-B:2.

Both parties agree that resolution of this case turns upon our construction of the statutory language "ownership, occupation, maintenance or operation of . . . all premises" and our determination of whether the actions of the RFD alleged by Farm Family constitute "ownership, occupation, maintenance or operation" of the insureds' property. Interpretation of a statute is a question of law, which we review *de novo. In the Matter of Liquidation of Home Ins. Co.*, 154 N.II. 472, 479 (2006). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language found in the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.*

Each party argues that the plain and ordinary meaning of the words used in RSA 507-B:2 supports its position. We agree with the town that the Janetoses' property was never, at any time relevant to this action, a premise "owned, occupied, maintained or operated" by the RFD and that, as a result, the town may not be held liable for damages to the property resulting from the second fire.

Farm Family first argues that the trial court impermissibly narrowed the scope of RSA 507-B:2 by construing the phrase "all premises" to mean "some premises"; namely, those owned, occupied, maintained or operated by a governmental unit. We disagree. RSA 507-B:2 allows certain suits against governmental units "arising out of ownership, occupation, maintenance or operation of . . . all premises." By its plain language, the statute places a limitation upon the phrase "all premises," narrowing that term to premises "owned, occupied, maintained or operated" by governmental units. A more expansive reading of the phrase "all premises" makes little sense; it is logically impossible for a governmental

unit to be liable for damages arising out of ownership, occupation, maintenance or operation of premises it does not own, occupy, maintain or operate. Accordingly, we reject Farm Family's argument regarding the trial court's construction of the phrase "all premises."

Farm Family concedes that the town neither owned nor maintained the insureds' property, but argues that the damages in this case resulted from the RFD's "occupation" and/or "operation" of that property. Regarding the statutory requirement of "occupation," Farm Family argues that: (1) the plain meaning of the term encompasses the RFD's seizure and control of the insureds' property in order to fight the fire there; and (2) the trial court erred by equating "occupation" with "occupancy" and then determining that because the town did not engage in "occupancy," it did not engage in "occupation."

The common definition of "occupation" includes the following relevant components:

> **3 a :** the actual possession and use of real estate (as by lease) : OCCUPANCY, TENANCY ... **b :** the possession or settlement of a place or area : TENURE ... **4 :** the act or process of occupying or taking possession of a place or area : SEIZURE ... **5 a :** the [usually] temporary holding and control of a country or a part of a country by a foreign military force ....

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1560 (unabridged ed. 2002). "Occupancy," in turn, has the following relevant meaning: "the taking and holding possession of real property under a lease or tenancy at will." *Id.*

According to Farm Family, the legislature's use of the word "occupation" in RSA 507-B:2 plainly communicated an intent to convey a meaning different from the definition of "occupancy," the word it used earlier in chapter 507-B, in its definition of "personal injury," *see* RSA 507-B:1, III(a). On that basis, Farm Family argues that the trial court erred in defining "occupation" by referring to a dictionary definition of "occupy" that more closely tracks the definition of "occupancy" than it tracks Farm Family's preferred definition of "occupation," which includes elements of the fourth and fifth definitions quoted above. Because the third dictionary definition quoted above lists "occupancy" as a synonym for "occupation," we are not persuaded by Farm Family's argument on this point.

Moreover, based upon the context in which the term "occupation" is used in RSA 507-B:2, that is, in conjunction with the term "ownership," we conclude that the legislature intended to convey a meaning akin to the third definition of "occupation" rather than a meaning reflecting the fourth or fifth definitions. That is, by "occupation," the legislature intended to

denote an ownership-like situation such as lease or rental of a property, rather than a seizure or a brief, transitory presence. We are also unpersuaded by Farm Family's comparison of a municipal fire department with an invading army. Our construction of the term "occupation" captures the intent of the legislature, we believe, because a construction based upon the fourth or fifth definitions would be so expansive as to render the limitation on liability provided by RSA 507-B:2 all but meaningless, *see Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-12 (2006) ("The legislature will not be presumed to pass an act ... nullifying, to an appreciable extent, the purpose of the statute."), and would extend municipal liability to virtually any property a police officer or firefighter temporarily controls in order to perform a police or firefighting function. Because Farm Family has alleged no facts which, if proven, would demonstrate that the town had the actual use or possession of the insureds' real estate, Farm Family has failed to state a claim for damages arising out of occupation of the property by the RFD.

Finally, even if the legislature did intend a meaning akin to that expressed in the fourth definition quoted above, *i.e.*, "the act or process of occupying or taking possession of a place or area," the facts Farm Family has alleged fall outside the definition; the RFD's assertedly negligent act—restoring electrical power without isolating the damaged portion of the structure—was part of the act or process of preparing the property for the insureds' return, not part of the act or process of seizing it from them.

Regarding the statutory requirement of "operation," Farm Family argues that when the RFD was putting out the fire in the Janetoses' garage, it was "operating at a fire," RSA 154:7, II (2002), and operating on the insureds' property. That may be, but the mere fact that the RFD conducted firefighting operations at, or operated firefighting equipment on, the insureds' property says nothing about whether the RFD was operating the property itself, which is what RSA 507-B:2 requires before liability may be imposed upon the town.

Farm Family further argues that when RFD personnel restored electrical power to the property, their actions constituted "operation" of the property within the meaning of RSA 507-B:2. It relies upon a dictionary definition of "operation" as "a doing or performing [especially] of action; WORK, DEED ... an exertion of power or influence; FUNCTIONING, WORKING" and including "a military or naval action, mission, or maneuver, including its planning and execution." Farm Family's preferred definitions all lack a direct object; they speak of operation, not the operation *of* something. But RSA 507-B:2 allows suits against governmental units for certain damages "arising out of ... *operation of* ... all premises." (Emphasis added.) Of the definitions of

674

"operation" that appear in WEBSTER'S DICTIONARY, the ones that pertain to the operation *of* something are these: "the whole process of planning for and operating a business or other organized unit ⟨the [operation] of a large household⟩ ⟨the [operation] of a steel mill⟩ ... the operating of or putting and maintaining in action of something (as a machine or an industry) ⟨careful [operation] of a motor car⟩ ⟨problems in the [operation] of a railroad⟩." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1581. Here, on the facts alleged by Farm Family, RFD personnel cut off and restored electrical power to the insureds' property. But neither those acts nor any other acts alleged by Farm Family rise to the level of "operating" the property in the manner contemplated by the statute. There are no facts alleged which, if proven, would establish that the RFD engaged in the whole process of planning for or operating the insureds' home as an organized unit, or put or maintained the insureds' property in action. Thus, under a proper construction of the term "operation," the RFD did not operate the insureds' property.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.