Strafford
No. 2011-162

DANA CHATMAN

v.

STRAFFORD COUNTY & a.

Argued: February 15, 2012
Opinion Issued: March 9, 2012

*Bussiere & Bussiere, P.A.*, of Manchester (*John P. Fagan* on the brief and orally), for the plaintiff.

*Getman, Schulthess & Steere, P.A.*, of Bedford (*Andrew R. Schulman* on the brief and orally), for the defendants.

DALIANIS, C.J. The plaintiff, Dana Chatman, appeals the order of the Superior Court (*Brown*, J.) dismissing his negligence claim against defendant Paul Giampa and his respondeat superior claim against defendants Strafford County (County) and Strafford County Department of Corrections (Corrections Department), pursuant to RSA 507-B:2 (2010). The plaintiff argues either that RSA 507-B:2 allows his claims because they arose out of the ownership, occupation, maintenance or operation of a motor vehicle or that RSA 507-B:2 violates his rights under the State Constitution to equal protection and to a remedy, *see* N.H. CONST. pt. I, arts. 2, 14. Because we conclude that the plaintiff's claims arose out of the operation of a motor vehicle, we hold that RSA 507-B:2 permits them. Therefore, we reverse the trial court's decision.

We accept the following allegations contained in the plaintiff's writ as true for the purposes of this appeal. *See Chatman v. Brady*, 162 N.H. 362, 363 (2011). On September 9, 2007, the plaintiff was participating in a work program under the control of the Corrections Department. *Id.* That day, he was assigned to assist in cleaning the site of the Lee County Fair under the supervision of Giampa, a Corrections Department employee. *See id.* Giampa directed the plaintiff and others to load numerous tables and chairs onto a trailer owned by James Brady. The trailer was not yet hitched to another vehicle and was located on uneven, soft ground. *See id.* After the trailer was fully loaded with tables and chairs, Giampa directed the plaintiff and others to lift it and hitch it to a pickup truck also owned by Brady. While the plaintiff and others were trying to hitch the trailer to the pickup truck, a weld on the trailer jack and/or the hitch failed, causing the trailer to fall on the plaintiff's left leg and ankle. *See id.* As a result, the plaintiff sustained permanent injury to his left leg and ankle. *See id.*

On September 7, 2010, the plaintiff sued the defendants, alleging that Giampa had been negligent and that the County and Corrections Department were vicariously liable for his negligence under the doctrine of respondeat superior. The defendants moved to dismiss the plaintiff's claims on the ground that they were barred by RSA 507-B:2 because they did not "aris[e] out of [the County's] ownership, occupation, maintenance or operation of [a] motor vehicle[]." RSA 507-B:2. The plaintiff objected, arguing in the alternative that either his claims arose out of the County's "operation of" the truck ("[a] motor vehicle"), RSA 507-B:2, or that RSA 507-B:2 was unconstitutional. The trial court agreed with the defendants

that the plaintiff's claims did not fall within the scope of RSA 507-B:2 and declined to find that RSA 507-B:2 was unconstitutional. This appeal followed.

In reviewing a motion to dismiss on appeal, we examine whether the allegations in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery. *J & M Lumber & Constr. Co. v. Smyjunas*, 161 N.H. 714, 724 (2011). We assume the plaintiff's factual allegations to be true and construe all reasonable inferences to be drawn from them in the light most favorable to him. *Id.* We need not, however, assume the truth of statements that are merely conclusions of law. *Id.* We then engage in a threshold inquiry that tests the facts in the writ against the applicable law and will affirm the trial court's dismissal if the writ's allegations do not constitute a basis for legal relief. *Id.*

Because we decide cases on constitutional grounds only when necessary, *see Buzzard v. F.F. Enters.*, 161 N.H. 28, 29 (2010), the first issue for our review is whether RSA 507-B:2 bars the plaintiff's claims. Resolving this issue requires us to interpret RSA 507-B:2 and related statutes. The interpretation of a statute is a question of law, which we review *de novo*. *Billewicz v. Ransmeier*, 161 N.H. 145, 151 (2010). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Appeal of Wilson*, 161 N.H. 659, 662 (2011). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." *Id.* (quotation omitted).

RSA chapter 507-B (2010) governs "BODILY INJURY ACTIONS AGAINST GOVERNMENTAL UNITS." Under RSA 507-B:1, a governmental unit means "any political subdivision within the state, including any county . . . or departments . . . thereof." RSA 507-B:2 provides, in pertinent part: "A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises."

■ We have previously explained that the plain meaning of the phrase "operation of all motor vehicles" is: "the operating of or putting and maintaining in action of something (as a machine or an industry) <careful

[operation] of a motor car> <problems in the [operation] of a railroad>."
*Farm Family Casualty Ins. Co. v. Town of Rollinsford*, 155 N.H. 669, 674
(2007) (quotation omitted); *see* WEBSTER'S THIRD NEW INTERNATIONAL
DICTIONARY 1581 (unabridged ed. 2002). In *Farm Family Casualty
Insurance Company*, we explained:

> Farm Family's preferred definitions all lack a direct object; they
> speak of operation, not the operation *of* something. But RSA
> 507-B:2 allows suits against governmental units for certain dam-
> ages "arising out of . . . *operation of* all [motor vehicles, and] all
> premises." (Emphasis added.) Of the definitions of "operation"
> that appear in WEBSTER'S DICTIONARY, the ones that pertain to
> the operation *of* something are these: "the whole process of
> planning for and operating a business or other organized unit
> <the [operation] of a large household> <the [operation] of a steel
> mill> . . . the operating of or putting and maintaining in action of
> something (as a machine or an industry) <careful [operation] of a
> motor car> <problems in the [operation] of a railroad>."

*Farm Family Casualty Ins. Co.*, 155 N.H. at 673-74 (ellipsis omitted); *see*
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1581; *see
also Com. v. Ginnetti*, 508 N.E.2d 603, 604-05 (Mass. 1987) (observing that
under Massachusetts statute, person operates motor vehicle "when, in the
vehicle, he intentionally does any act or makes use of any mechanical or
electrical agency which alone or in sequence will set in motion the motive
power of the vehicle. The words of the statute include the setting in motion
of the operative machinery of that vehicle as well as the driving of the
vehicle under the power of the motor machinery." (quotation and ellipsis
omitted)); *Karnes v. Ace Cab Company*, 287 S.W.2d 378, 380 (Mo. Ct. App.
1956) ("operating" a motor vehicle "encompass[es] all acts necessary to be
performed in the movement of a motor vehicle from one place to another or
fairly incidental to the ordinary course of its operation, including not only
the act of stopping en route for purposes reasonably associated with the
transit but also all acts which, in point of time and circumstance, are
reasonably connected with entering the vehicle at the point of departure
and alighting therefrom at destination").

 RSA 507-B:2 also states that the "bodily injury, personal injury or
property damage" must "aris[e] out of" the operation of a motor vehicle. In
the insurance context, we have interpreted similar language "to mean that
the injury must originate from, grow out of, or flow from" the operation or
use of the vehicle. *Concord Gen. Mut. Ins. Co. v. Doe*, 161 N.H. 73, 76 (2010).
In other words, a "causal connection must exist between the resulting harm
and the [operation or] use of the vehicle." *Id.* (quotation omitted). In the

insurance context, we have held that, although proximate causation is not required, "a tenuous connection with an automobile is not sufficient." *Id.* (quotation omitted).

■ For instance, "when a vehicle acts as merely the situs of an injury, the causal connection between the injury and the use of the vehicle is too tenuous to support coverage." *Id.*; *see Akerley v. Hartford Ins. Group,* 136 N.H. 433, 440 (1992). Thus, in *Akerley,* we ruled that a police officer's insurer had no obligation to provide insurance coverage to the officer for injuries he sustained while removing an uninsured motorist from a vehicle because the vehicle was only the situs of the officer's injuries. *Akerley,* 136 N.H. at 440; *cf. Lebroke v. U.S. Fid. & Guar. Ins. Co.,* 146 N.H. 249, 249-51 (2001) (no coverage for injuries sustained when intervenor was bitten by dog while loading brochures into automobile when automobile was merely situs of injury).

■ By contrast, when the injuries stem from an act that is part of using a motor vehicle, the causal connection is established. *See Concord Gen. Mut. Ins. Co,* 161 N.H. at 76. For instance, in *Wilson v. Progressive Northern Insurance Co.,* 151 N.H. 782, 783, 792 (2005), we held that when a taxi cab driver closed the cab's door on the passenger's dog's tail, causing the dog to bite the passenger's face, the injury arose out of the use of a motor vehicle. We decided that the act of "closing the car door . . . is part of using [an] automobile." *Wilson,* 151 N.H. at 792.

■ Although the above cases concerned the meaning of the phrase "arising out of the use of a motor vehicle," and although the words "use" and "operation" are not synonymous, *see DeJarnette v. Federal Kember Ins. Co.,* 475 A.2d 454, 458 (Md. 1984); *Protective Fire and Casualty Company v. Cornelius,* 125 N.W.2d 179, 184 (Neb. 1963); 8 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 111:31, at 111-56 to 111-57 (2005), we find these cases instructive as to the plain meaning of the phrase "arising out of . . . operation of all motor vehicles" in RSA 507-B:2.

We also find instructive cases from other jurisdictions addressing whether loading a truck constitutes operation of a motor vehicle. *Compare Melchert v. Melchert,* 519 N.W.2d 223, 226 (Minn. Ct. App. 1994) (loading and unloading truck is part of its operation), *and Lukaszewicz v. Concrete Research, Inc.,* 168 N.W.2d 581, 586 (Wis. 1969) (same), *with Glens Falls Insurance Co. v. Consolidated Freightways,* 51 Cal. Rptr. 789, 797 (Dist. Ct. App. 1966) (loading truck is not part of its operation).

For instance, the plaintiff in *Melchert* was hurt while transporting wet hay bales to his home. *Melchert,* 519 N.W.2d at 225. The wet hay bales were on a hay wagon. *Id.* The plaintiff, his son and his son's friend transferred

them from the wagon to a trailer, which was hitched to a truck. *Id.* The plaintiff was injured when he got into the trailer and wound "up the jack on which the trailer tongue had been resting before it was attached to the pickup truck." *Id.* While the plaintiff was doing this, his son began tossing wet bales of hay from the hay wagon onto the trailer, and one of the bales hit the plaintiff, injuring him. *Id.*

The issue in the case was whether the plaintiff's injuries arose out of the operation of the pickup truck. *Id.* The court held "that the entire range of activities inherent in the loading and unloading process must be considered to determine whether a vehicle was being operated" and that "[o]peration includes participation in loading and unloading activities." *Id.* at 226; *see Lukaszewicz,* 168 N.W.2d at 586.

The court decided that when the plaintiff was injured, the pickup truck was being "operated" because its operation included loading the trailer which was attached to it. *Melchert,* 519 N.W.2d at 226. "The trailer and the pickup truck were being operated as a unit." *Id.* The plaintiff, therefore, "was involved in the loading operation when he raised the jack after the truck and trailer were hitched together." *Id.*

In *Glens Falls,* a California court reached the opposite conclusion. *See Glens Falls,* 51 Cal. Rptr. at 797. In *Glens Falls,* a Consolidated Freightways (CF) employee drove a truck owned by CF to another company to pick up a load of concrete beams. *Id.* at 791. While at the other company, the CF employee was injured when he struck his head against a steel hook that was suspended from the forklift that the other company's employee was using to help load the beams. *Id.* The issue in the case was whether the other company's employee could be deemed to have been operating CF's truck because he was helping the CF employee load the concrete beams. *Id.* at 791-92. In holding that the other company's employee did not operate CF's truck, the court observed: "Loading a truck is not operating it, as any teamster knows." *Id.* at 797.

■ We find the reasoning of the *Melchert* court more persuasive and more in line with our insurance cases, and, therefore, adopt it. Accordingly, like the *Melchert* court, we hold "that the entire range of activities inherent in the loading and unloading process must be considered to determine whether a vehicle was being operated" and that "[o]peration includes participation in loading and unloading activities." *Melchert,* 519 N.W.2d at 226.

■ We also conclude that the plaintiff in this case, like the plaintiff in *Melchert,* was involved in the loading operation when he lifted the fully-loaded trailer and attempted to hitch it to the truck. Operating the truck in this case included attempting to hitch the trailer to the truck.

"When we view the loading operation as a whole, we discern that the pickup truck was being operated at the time [the plaintiff] was injured." *Id.*

Because it is not disputed that a truck is a "motor vehicle" within the meaning of RSA 507-B:2, we hold that the plaintiff's claims "aris[e] out of [the County's] . . . operation of [a] motor vehicle[ ]," and, thus, fall within the scope of RSA 507-B:2.

In light of our decision, we need not address the plaintiff's alternative argument that RSA 507-B:2 is unconstitutional.

*Reversed and remanded.*

HICKS, CONBOY and LYNN, JJ., concurred.