NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2014-635


ALISSA LAMB M/N/F LOGAN LAMB

v.

SHAKER REGIONAL SCHOOL DISTRICT

Argued: April 22, 2015
Opinion Issued: July 15, 2015


The MuniLaw Group, of Epsom (Tony F. Soltani on the brief and orally), for the plaintiff.


Curtin, Murphy & O'Reilly, P.C., of Nashua (John A. Curran on the brief and orally), for the defendant.


HICKS, J. The plaintiff, Alissa Lamb as mother and next friend of Logan Lamb, appeals an order of the Superior Court (Smukler, J.) dismissing her complaint against the defendant, the Shaker Regional School District. The trial court ruled that the defendant was protected by municipal immunity pursuant to RSA 507-B:5 (2010). On appeal, the plaintiff argues that the trial court erred by failing to apply the exception to general immunity pursuant to RSA 507-B:2 (2010). We affirm.

The trial court found, or the record reflects, the following. On or around May 7, 2012, Logan, a student at a school operated by the defendant, was playing football on the playground during the lunch recess when another student tackled him and "slammed him to the ground," causing injury to his head. Logan did not return to class after lunch, and none of the school's staff reported the incident on the playground or that Logan was missing from class. Logan was later found wandering the halls, disoriented. He was taken to the nurse's office, where he remained for approximately fifty minutes, at which point the nurse contacted the plaintiff to retrieve him from school. The nurse did not call for an ambulance. The plaintiff took Logan to the emergency room, where she learned that he had possibly suffered a concussion.

On January 30, 2014, the plaintiff filed her complaint alleging that the defendant "acted in a special relationship to [Logan], taking responsibility for [his] health, safety, and [well-being] while he was under its care, custody, and control," and that it had breached its duty leading to Logan's injuries. The defendant moved to dismiss, arguing that RSA 507-B:5 immunizes it from the plaintiff's negligence claims and that those claims do not fall within the exception to immunity created by RSA 507-B:2. On August 1, 2014, the trial court granted the motion to dismiss. This appeal followed.

On appeal, the plaintiff asserts two arguments for our consideration: (1) that the exception to general municipal immunity, RSA 507-B:2, applies in this case because the plaintiff's injuries arose from the operation of the defendant's premises; and (2) that the plaintiff should have been allowed to proceed to discovery to determine whether the negligent act "was a result of the defendant's knowledge of and failure to correct known student supervisory deficiencies." (Bolding omitted.) We will address each argument in turn.

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged by the plaintiff and construe all reasonable inferences in the light most favorable to the plaintiff. Farm Family Cas. Ins. Co. v. Town of Rollinsford, 155 N.H. 669, 670 (2007). We need not, however, assume the truth of statements in the pleadings that are merely conclusions of law. Ojo v. Lorenzo, 164 N.H. 717, 721 (2013). If the facts do not constitute a basis for legal relief, we will uphold the granting of a motion to dismiss. Farm Family, 155 N.H. at 670.

RSA chapter 507-B is entitled "BODILY INJURY ACTIONS AGAINST GOVERNMENTAL UNITS." (Bolding omitted.) RSA 507-B:5 states that "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." RSA 507-B:5. One exception to RSA 507-B:5 is set forth in RSA 507-B:2, which states, in relevant part, that "[a] governmental unit may be held liable for damages . . . caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or

2

operation of all motor vehicles, and all premises." RSA 507-B:2. The parties do not dispute that the defendant meets the definition of "governmental unit" for the purposes of RSA 507-B:5, see RSA 507-B:1, I (2010), and that the plaintiff's action is one for "bodily injury," RSA 507-B:1, II (2010). Furthermore, we have previously interpreted RSA 507-B:2 to require a nexus between the claim and the governmental unit's ownership, occupation, maintenance or operation of its motor vehicles or premises. Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 696-97 (2013). Thus, regarding the plaintiff's first argument, the issue is whether the defendant's alleged liability arises out of its operation of the school premises.

To resolve the issue before us — determining the meaning of "operation of . . . all premises" pursuant to RSA 507-B:2 — we must engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. State v. Dor, 165 N.H. 198, 200 (2013). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When we interpret a statute, we look first to the statute's language, and, if possible, construe that language according to its plain and ordinary meaning. Id. We do not read words or phrases in isolation, but in the context of the entire statutory scheme. Id. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. Id. We "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Smith v. City of Franklin, 159 N.H. 585, 588 (2010) (quotation omitted). This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. LLK Trust v. Town of Wolfeboro, 159 N.H. 734, 736 (2010).

The plaintiff, relying upon our decision in Farm Family, urges us to conclude that "operation of . . . all premises," RSA 507-B:2, includes the operation of a business or enterprises located on those premises. Her reliance upon Farm Family is misplaced.

In Farm Family, the issue was whether the actions of the Rollinsford Fire Department, in cutting off and then improperly restoring electrical power to the insured's property, constituted "ownership, occupation, maintenance or operation" of the insured's home and garage. Farm Family, 155 N.H. at 671 (quotation omitted). We held that because the insured's property was never "owned, occupied, maintained or operated" by the fire department, the town was immune from liability for damages to the property resulting from a fire. Id.

Farm Family argued that when fire department personnel restored power to the property, their actions constituted "operation" of the property within the meaning of RSA 507-B:2. Id. at 673. We observed that Farm Family's preferred definitions of the word "operation" were flawed because they lacked a

3

direct object and RSA 507-B:2 requires a direct object — it allows suits against governmental units for damages arising out of "operation <u>of</u>" all premises.  <u>Id</u>.  We explained that the definitions that pertain to operation of something are: (1) "the whole process of planning for and operating a business or other organized unit <the [operation] of a large household> <the [operation] of a steel mill>"; and (2) "the operating or putting and maintaining in action of something (as a machine or an industry) <careful [operation] of a motor car> <problems in the [operation] of a railroad>."  <u>Id</u>. at 674 (quotations omitted); <u>Webster's Third New International Dictionary</u> 1581 (unabridged ed. 2002).  We then applied those definitions to the alleged facts and concluded that neither cutting off nor restoring electrical power to the insured's property constituted engaging in "the whole process of planning for or operating the insured's home as an organized unit" or putting or maintaining "the insureds' property in action."  <u>Farm Family</u>, 155 N.H. at 674.  Thus, we held "under a proper construction of the term 'operation,' the [fire department] did not operate the insureds' property."  <u>Id</u>.

Although one of the dictionary definitions upon which we relied in <u>Farm Family</u> uses a "business" as a direct object of the word "operation," RSA 507-B:2 uses "premises" as a direct object of the word "operation."  In <u>Farm Family</u>, we were not asked to define the word "premises."  In the instant case, we must do so for the first time.

Although RSA chapter 507 does not define the term "premises," <u>Webster's Third New International Dictionary</u> defines "premises" to mean: (1) "property that is conveyed by bequest or deed"; (2) "a specified piece or tract of land with the structures on it"; (3) "a building, buildings, or part of a building covered by or within the stated terms of a policy (as of fire insurance)"; and (4) "the place of business of an enterprise or institution."  <u>Webster's Third New International Dictionary</u>, <u>supra</u> at 1789.  <u>Black's Law Dictionary</u> defines "premises" to mean "[a] house or building, along with its grounds; . . . the buildings and land that a shop, restaurant, company, etc. uses."  <u>Black's Law Dictionary</u> 1371 (10th ed. 2014).  Both authorities limit the definition of premises to real property and any structures built upon it — that is, the physical property.  This is consistent with the historical evolution of the term.  <u>See</u> Garner, <u>Garner's Dictionary of Legal Usage</u> 700 (3d ed. 2011) (detailing the history of "premises" as used in the law).  We see no reason to expand the definition in the manner desired by the plaintiff.  Were we to include in the definition of premises the enterprises contained within the premises, we would effectively void the immunity granted by RSA 507-B:5.  <u>See</u> <u>Dichiara</u>, 165 N.H. at 696 (declining to adopt an interpretation of RSA 507-B:2 that would "provide a blanket exception to RSA 507-B:5").  Accordingly, we conclude that the RSA 507-B:2 exception to municipal immunity requires a nexus between the claim and the governmental unit's ownership, occupation, or operation of its <u>physical</u> premises.

This ruling is consistent with our prior holdings interpreting the motor vehicle exception to immunity pursuant to RSA 507-B:2. In <u>Chatman v. Strafford County</u>, 163 N.H. 320 (2012), we recognized that "when a vehicle acts as merely the situs of an injury, the causal connection between the injury and the use of the vehicle is too tenuous to support coverage." <u>Chatman</u>, 163 N.H. at 324 (quotation omitted) (using cases interpreting motor vehicle insurance policies as instructive). "By contrast, when the injuries stem from an act that is part of using a motor vehicle, the causal connection is established." <u>Id</u>. The same is true for the premises exception: simply because the alleged injury occurs in connection with the enterprise conducted on the defendant's premises does not mean that it arose out of the defendant's operation of the physical premises. Because the plaintiff's allegations that the defendant "acted in a special relationship to" Logan and breached its duty to him do not support a claim of injury arising out of the defendant's operation of the school's physical premises, her claim does not fall within the exception to municipal immunity created by RSA 507-B:2.

The plaintiff next argues that we should reverse the trial court's decision so that it may benefit from discovery and learn "[i]f the school knew of and failed to correct inadequacies in student supervision to prevent foreseeable student injuries." The plaintiff relies upon our decision in <u>Marquay v. Eno</u>, 139 N.H. 708 (1995), to support this argument. She also appears to suggest that <u>Marquay</u> would defeat the defendant's immunity. We disagree.

In <u>Marquay</u>, the United States District Court for the District of New Hampshire presented us with a series of certified questions and asked us to consider whether school officials had common law duties "to protect . . . students by reporting alleged sexual misconduct to the proper authorities and taking other protective measures, if they knew . . . that [the students] were being sexually harassed, assaulted or abused by [school employees]." <u>Marquay</u>, 139 N.H. at 712. We answered that some officials do owe such a duty. We were never asked to consider whether RSA 507-B:2 and RSA 507-B:5 immunize the school district from suit, and we did not opine on the issue of municipal immunity. As we have decided today, however, RSA 507-B:5 immunizes the defendant from suit based upon the particular claims asserted by the plaintiff. Permitting the plaintiff access to discovery in connection with her claims, as alleged, would not enable the plaintiff to overcome the immunity provided by RSA 507-B:5. Accordingly, we decline to reverse the decision of the trial court on that basis.

<u>Affirmed</u>.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.