**UNITED STATES of America**

**v.**

**Renaldo RODRIGUEZ, Defendant.**

**No. CR 92–531.**

United States District Court,
E.D. New York.

Jan. 3, 1994.

Zachary W. Carter, U.S. Atty., E.D.N.Y. by Alan B. Vickery, Asst. U.S. Atty., Brooklyn, NY, for U.S.

Kalina & Guido by Robert I. Kalina, New York City, for defendant.

## MEMORANDUM and ORDER

RAGGI, District Judge:

Renaldo Rodriguez moves for pre-trial dismissal of Count Four of criminal indictment number 92–531 charging him with violating 18 U.S.C. § 924(c)(1) (1993) by using a firearm equipped with a silencer in relation to a drug trafficking crime. Defendant contends that the term "equipped," as used in § 924(c)(1), is unconstitutionally vague when applied to his case. He submits that to pass constitutional muster the term must be interpreted in light of the rule of lenity to apply only when a silencer is actually attached or affixed to a firearm. Since that is concededly not this case, he requests dismissal.

 After careful consideration of the briefs submitted by the parties, as well as oral argument, this court denies defendant's motion. It finds that the term "equipped" is not unconstitutionally vague as applied to this case. In everyday parlance the word "equipped" is understood to mean supplied or made ready for action with whatever is necessary to meet a particular need or exigency. This concept does not depend on one item being attached to another to provide persons with sufficient notice of the conduct proscribed. Instead, it turns on the totality of circumstances under which the items are possessed and used, including any evidence from which it could fairly be inferred that the items were purposely placed in such proximate relation to one another as to ensure their ready availability for joint action. Because a reasonable person would understand that an individual who places a silencer in a briefcase with a compatible loaded 9 mm. pistol (as alleged in this case) has "equipped" the firearm with the silencer, defendant's

prosecution pursuant to 18 U.S.C. § 924(c)(1) does not violate the Constitution. Of course, it will be for the jury to decide if the government has proved defendant guilty of this crime beyond a reasonable doubt.

## Factual Background

The facts relevant to this motion are simply stated. On May 29, 1992, in conjunction with a lengthy investigation into large-scale drug trafficking by a group known as the "Clemente Organization," New York City police officers executed a search warrant on apartment 4K at 140–15 Holly Avenue, Flushing, New York. On various occasions, officers had seen the defendant Renaldo Rodriguez, then known to them only as "Ray," enter or leave the subject apartment carrying brown paper bags. Intercepted telephone conversations among members of the Clemente Organization and surveillance observations of "Ray" meeting with some of Clemente's confederates established probable cause to think that "Ray" was a drug supplier for Clemente.

The search of apartment 4K yielded drugs, cash, and a daunting cache of weapons. Among the items seized were:

1. Numerous plastic and glassine bags containing heroin.

2. Several hundred stamps containing Lysergic Acid Diethylamide, more commonly known as LSD.

3. Two electric scales.

4. A money counting machine.

5. A 9 mm. Uzi semi-automatic pistol loaded with 26 rounds of ammunition.

6. A 9 mm. Uzi semi-automatic pistol loaded with 16 rounds of ammunition.

7. A 9 mm. Intratec semi-automatic pistol loaded with 18 rounds of ammunition.

8. A 9 mm. Smith & Wesson semi-automatic pistol loaded with 13 rounds of ammunition.

9. A 9 mm. Luger semi-automatic pistol loaded with seven rounds of ammunition.

10. A 9 mm. Glock semi-automatic pistol.

11. A Smith & Wesson .44 caliber revolver.

12. A Walther .380 caliber semi-automatic pistol loaded with seven rounds of ammunition.

13. A Davis .380 caliber semi-automatic pistol loaded with two rounds of ammunition.

14. A .22 caliber revolver.

15. A starter pistol.

16. Three silencers.

17. Rounds of assorted caliber ammunition.

18. $133,201 in United States currency.

The lessee of the apartment, defendant Renaldo Rodriguez, was thereafter charged both in New York State Supreme Court in the Bronx for his participation in the Clemente Organization, criminal indictment number 3965–91, and in this court for his illegal possession of drugs and firearms in the Eastern District of New York. Count Four of the federal indictment states that "during and in relation to a drug trafficking crime," specifically the possession of heroin with intent to distribute charged in Count Three, Rodriguez "did use a firearm equipped with a firearm silencer."

In support of this charge, the government expects to adduce evidence at trial to demonstrate that a loaded Intratec 9 mm. semiautomatic pistol and a screw on silencer were found with various other weapons in a briefcase in defendant's bedroom in close proximity to drugs. The government wishes to offer expert testimony that the pistol had been designed or modified so as to permit the particular silencer to be screwed on to it in a matter of seconds.

### Discussion

18 U.S.C. § 924(c)(1) strictly proscribes the use of firearms in relation to drug trafficking. That portion of the statute here at issue provides as follows:

Whoever, *during and in relation to any* crime of violence or *drug trafficking crime* (including a crime of violence or drug trafficking crime which provides for enhanced punishment if committed by the use of a deadly weapon or device) for which he may be prosecuted in a court of the United States, *uses or carries a firearm, shall, in* *addition to the punishment provided for* *such crime of violence or drug trafficking* *crime, be sentenced to imprisonment for* *five years, and if the firearm is* a short-barreled rifle, short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is *equipped with a firearm silencer* or firearm muffler, *to imprisonment* *for thirty years.*

18 U.S.C. § 924(c)(1) (emphasis added).

Defendant submits that the statute's enhanced penalty provision for use of a firearm "equipped with a ... silencer" is unconstitutionally vague as applied to his case because it is unclear what it means for a firearm to be "equipped" with a silencer. *See Village of* *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982) (vagueness challenges to statutes not implicating First Amendment rights must be considered "as applied" to the particular case); *accord* *United States v. Strauss,* 999 F.2d 692, 697–98 (2d Cir.1993). The government submits that the issue need not be addressed at this time since the enhanced penalty for use of a firearm equipped with a silencer is not a matter for the jury in determining whether guilt has been proved, but only for the court in sentencing. This court disagrees with both parties.

The government relies on *United* *States v. Harris,* 959 F.2d 246 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992), to support its claim that only the sentencing court, not the jury, need consider whether a firearm used in violation of § 924(c)(1) was equipped with a silencer. In fact, *Harris* stands only for the proposition that, for purposes of § 924(c)(1)'s prohibition against use of a machinegun, the jury need not find that the defendant expressly knew the firearm he was carrying was capable of automatic firing. The *Harris* jury was asked to decide (1) whether the defendant knowingly possessed and used a firearm, and (2) whether that firearm was, in fact, a machinegun. *Id.* at 258–59. So too in this case, the jury will have to find, *inter alia,* that the defendant knowingly used a firearm in rela-

tion to a drug trafficking crime, and that the firearm at issue was equipped with a silencer. Since the jury will necessarily have to consider what it means for a firearm to be equipped with a silencer, defendant's vagueness challenge is properly before the court at this time.

■ It is the Constitution's Due Process Clause that protects defendants from prosecution for crimes that are not clearly defined. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). But a statute is not unconstitutionally vague simply because it " 'requires a person to conform his conduct to an imprecise but comprehensible normative standard.' " *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)). Due process is violated only if a statute specifies " 'no standard of conduct ... at all,' " *id.,* such that a "person of ordinary intelligence" is not given "a reasonable opportunity to know what is prohibited," *Grayned v. City of Rockford, supra.*

Section 924(c)(1), insofar as it prohibits individuals engaged in drug trafficking crimes from using firearms equipped with silencers, is not unconstitutionally vague. Defendant is willing to concede this point *if* the rule of lenity is applied to limit the statute's application to cases in which a defendant is using a firearm with a silencer actually affixed to it. But he insists that any broader application, such as the government relies on to support Count Four of his indictment, is violative of due process and, therefore, requires dismissal.

In general, the rule of lenity provides that " 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.' " *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 285, 98 S.Ct. 566, 572, 54 L.Ed.2d 538 (1978) (quoting *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971)). But as the Supreme Court itself has recognized, to consider the rule in the abstract is to gain little assistance, " " 'since it leaves open the crucial question—almost invariably present—of how

much ambiguousness ... constitutes ambiguity.' " *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *United States v. Hansen,* 772 F.2d 940, 948 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986)). The mere fact that a defendant can articulate a construction of a statute more narrow than that urged by the government is not enough to render that statute ambiguous and require application of the rule of lenity. *Id.* 498 U.S. at 108, 111 S.Ct. at 465; *accord, Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). The rule is not, after all, intended to beget ambiguities not really present in statutes when they are given " 'their fair meaning in accord with the manifest intent of the lawmakers.' " *United States v. Turkette,* 452 U.S. 576, 587 n. 10, 101 S.Ct. 2524, 2531 n. 10, 69 L.Ed.2d 246 (1981) (quoting *United States v. Brown,* 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948)).

■ Thus, the rule of lenity is generally used as a last, rather than first, resort in resolving problems of statutory interpretation. It " 'comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.' " *Chapman v. United States,* 500 U.S. 453, ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (quoting *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961)); *accord United States v. Concepcion,* 983 F.2d 369, 380 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). Indeed, it is "not applicable unless there is a 'grievous ambiguity or uncertainty in the language and structure of the Act,' ... such that even after a court has 'seize[d] everything from which aid can be derived,' it is still 'left with an ambiguous statute.' " *Chapman v. United States, supra* (quoting *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782 (1974) and *United States v. Bass,* 404 U.S. at 347, 92 S.Ct. at 522). The "everything" to be examined includes, of course, " 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States, supra*

(quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980)). Language, however, is always the starting point, for if it is unambiguous, it is conclusive. *United States v. Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527.

In considering the language used by Congress in drafting § 924(c)(1), this court notes that many of the relevant terms are statutorily defined. Among these are "person," "whoever," "firearm," "destructive device," "shotgun," "short-barreled shotgun," "rifle," "short-barreled rifle," "machinegun," "firearm silencer," and "firearm muffler," *see* 18 U.S.C. §§ 921(a)(1), (3), (4), (5), (6), (7), (8), (23), and (24), as well as "drug trafficking crime," and "crime of violence," 18 U.S.C. §§ 924(c)(2) and (3). No definition is provided for the term "equipped." [1]

Under such circumstances, "equipped" is to be given its ordinary everyday meaning. *E.g., Moskal v. United States,* 498 U.S. at 108, 111 S.Ct. at 465; *United States v. Concepcion,* 983 F.2d at 380. "Equip" is generally understood to mean "to provide with what is necessary, useful, or appropriate," or to "fit out," whether "with material resources," or "clothing or ornament," or even "with intellectual or emotional resources." Webster's Third New International Dictionary 768 (1971). It is also understood to mean "to make ready or competent for service or action or against a present need." *Id.* That these everyday definitions are adequate to deal with the present issue of law is apparent from the similar definition of "equip" found in Black's: "To furnish for service or against a need or exigency; to fit out; to supply with whatever is necessary to efficient action in any way." Black's Law Dictionary 631 (4th Ed.1968).

What is key to these definitions is not whether items are attached to one another, as urged by defendant, but whether the items stand in a relation one to the other that makes them ready for efficient service to meet a particular need or exigency. *See People v. Verdino,* 78 Misc.2d 719, 721, 357 N.Y.S.2d 769, 772 (Suffolk County Ct.1974) (holding that state law prohibiting one from "equip[ping] a motor vehicle" with a radio set capable of receiving police signals was not limited to cases where the receiver was actually plugged into the vehicle: "a physical fastening is neither implicit in the term 'equip' nor necessary in order for a vehicle to be equipped as proscribed in the statute"). Obviously, one can frequently achieve this goal by attaching the items, but that is not the only means by which to do so. Indeed, had Congress's sole concern been with such a narrow category of equipment, it would have been simple enough to write legislation proscribing use of firearms to which silencers have been "attached." Instead, by deliberately choosing the more expansive word, "equipped," Congress comprehensively addressed the heightened dangers perceived to be present when drug traffickers, in calculated fashion, proximately position firearms and silencers so as to ensure that within seconds they are readily available for joint use.

█ Thus, whether a firearm is equipped with a silencer—indeed, whether any item is equipped with another—necessarily turns on the circumstances of a particular case, not simply on the fact of attachment. A few examples illustrate the frequency with which one item can generally be understood to be equipped with another although they are not always attached. Certainly, a hardware manufacturer can fairly offer to sell a saw "equipped" with various blades or a drill "equipped" with several bits of different sizes although in his packaging he separates the various items. Similarly, an appliance manufacturer can offer a vacuum cleaner "equipped" with various cleaning tools (and even call them "attachments") although none

---

1. Other criminal statutes also use the word "equip" or "equipped," but do not specifically define it. *See* 18 U.S.C. § 959(c) (1976) (prohibiting enlistment in foreign service except by citizens of foreign countries who are transiently within the United States and who enlist or enter on board a vessel of war "which at the time of its arrival within the United States was fitted and equipped as such"); 18 U.S.C. § 964 (1976) (providing that, during any war in which the United States is a neutral nation, "it shall be unlawful to send out of the United States any vessel built, armed, or equipped as a vessel of war"); 18 U.S.C. § 1582 (1984) (subjecting to criminal prosecution any person who "builds, fits out, equips, loads, or otherwise prepares or sends away any vessel" from a United States port for use in the slave trade).

is actually attached to the suction nozzle at the time of sale, and although no more than one at a time can, in fact, be attached. A soldier can be equipped for service with uniforms and gear for different duties and climates, various weaponry, and supplies of ammunition but, except in actual combat, he is rarely required to carry all of them on his person.

So in the criminal context, it can fairly be said—and more important for defendant's vagueness challenge, it can commonly be understood by the person of average intelligence—that a firearm may be equipped with a silencer even though the latter is not actually attached to the former. What is essential is proof that the two weapons stand in such a relation to one another that they can efficiently be pressed into joint service to meet a particular need. This necessarily requires consideration of the physical closeness between the weapons as well as the ease with which they can accept one another. Certainly, if it were proved that a defendant had deliberately placed a silencer in the same briefcase as a loaded 9 mm. pistol, and that affixing that silencer to that pistol would take only seconds, no reasonable person could complain that he did not fairly understand that by such placement he was "equipping" the firearm with the silencer.[2]

Further supporting this court's conclusion that "equipped," as used in § 924(c)(1), is fairly interpreted in light of its broad general meaning and not narrowly limited to items attached to one another is case law interpreting other key terms in the statute. The core prohibition of § 924(c)(1) is, after all, the "use" or "carrying" of a firearm during a crime of violence or a drug trafficking crime. It is only as a variation on that theme that particularly severe punishments are mandated if the firearm at issue is a machinegun, or a destructive device, or if it is equipped with a silencer. The terms "use" and "carry"— which are not statutorily defined—are certainly susceptible to narrow interpretation.

And yet the federal courts have not, in either the name of lenity or due process, engaged in the sort of restrictive line drawing here urged by defendant. To the contrary, both terms have been given "exceptionally broad" definitions drawn from general usage. See 1A Leonard Sand, et al., Modern Federal Jury Instructions ¶ 35.08, Comment to Instruction 35–55 (1993).

Thus, prosecution for "carrying" a firearm in violation of § 924(c)(1) has not been limited to those who have such weapons on their persons. It has been extended to those who have a gun "within reach" during the commission of a drug offense. See United States v. Feliz–Cordero, 859 F.2d 250, 253 (2d Cir. 1988) (citing approvingly to United States v. Brockington, 849 F.2d 872 (4th Cir.1988) (evidence that defendant had fully loaded automatic pistol under his seat in a taxi cab and heroin and cocaine on his person sufficient to support a conviction for carrying a firearm during and in relation to a drug trafficking crime)).

Even more significantly, "use" of a firearm has not been limited to those occasions when a defendant actually fires or brandishes such a weapon. It has been held to apply to those drug transactions "in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction," or to those situations in which "[t]he circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction." Id. at 254 (emphasis added); see United States v. Medina, 944 F.2d 60 (2d Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); United States v. Meggett, 875 F.2d 24 (2d Cir.), cert. denied, 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989).[3]

---

2. Because defendant's constitutional challenge is to the statute as applied to his case, this court need not consider more remote relationships between firearms and silencers.

3. The Supreme Court has also upheld prosecution for "use" of a firearm in violation of § 924(c)(1) when the firearm was a medium of exchange used to acquire a quantity of drugs. Smith v. United States, —— U.S. at ——, 113 S.Ct. at 2054.

There is a striking consistency between the cited highlighted portion of the standard for determining "use" and the commonly understood meaning of the term "equipped." Such consistency is, of course, to be expected when terms so closely related in a statutory scheme are interpreted to effect Congress's purpose.[4] Had Congress, in enacting § 924(c)(1), intended by the word "use" to proscribe only the actual firing or brandishing of a firearm, defendant's contention that one could not, therefore, use a firearm "equipped" with a silencer unless the silencer was actually attached to the gun brandished or fired might have some appeal. But if, as *Feliz–Cordero* makes plain, a drug-dealing defendant uses a firearm in violation of § 924(c)(1) whenever he "strategically locate[s] it so as to [make it] quickly and easily available for use," then it is fair to say that the same defendant has "equipped" his firearm with a silencer whenever he has placed the two weapons in such a proximate relation to one another that they are ready for efficient joint action to meet any need or exigency that may arise.

The court finds that by giving the word "equipped," as used in § 924(c)(1), its common, everyday meaning, it best serves Congress's intent in broadly proscribing the use of firearms in relation to drug trafficking. Such an interpretation is, moreover, sufficiently comprehensible to persons of ordinary intelligence, particularly when considered in light of the facts of this case, to provide the notice required by due process. Defendant's constitutional challenge to Count Four of the indictment is rejected.

*Conclusion*

■ The statutory prohibition against use of a firearm "equipped" with a silencer in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1), is not unconstitutionally vague as applied to the facts of this case. The everyday meaning of the term equipped—supplied or made ready with whatever is necessary efficiently to meet a particular need or exigency—gives adequate notice to a person of ordinary intelligence that he risks prosecution if, in relation to drug trafficking, he deliberately places a silencer in a briefcase with a loaded firearm designed or modified readily to accept that silencer. It is, therefore, unnecessary to apply the rule of lenity to limit the statute to those cases in which a silencer is actually attached to a firearm. Defendant's motion to dismiss Count Four is denied. The jury will consider such relevant evidence as is adduced with respect to this count and determine whether the government has met its burden of proof beyond a reasonable doubt.

*SO ORDERED.*

---

**4.** Such legislative history as pertains to that part of § 924(c)(1) proscribing use of a firearm equipped with a silencer is silent as to Congress's intent in using the word "equipped." *See* Pub.L. 99–308, 1986 U.S.Code Cong. & Admin.News 1327; *Armor Piercing Ammunition and the Criminal Misuse and Availability of Machineguns and Silencers,* 97th Cong., 2nd Sess. (May 17, May 24, and June 27, 1984). Nevertheless, there is no doubt that Congress expected "use" of a firearm—to which the equipped prohibition relates—to be interpreted broadly to include not only those circumstances where a gun was actually fired or brandished, but also those circumstances where "it could be found that the defendant intended to use the gun if a contingency arose or to make his escape." S.Rep. No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10 and *quoted in United States v. Feliz–Cordero,* 859 F.2d at 254.