Merrimack
No. 2012-356

NEW HAMPSHIRE INDEPENDENT PHARMACY ASSOCIATION

v.

NEW HAMPSHIRE INSURANCE DEPARTMENT

Argued: November 8, 2012
Opinion Issued: December 21, 2012

*Molan, Milner & Krupski, PLLC*, of Concord (*Glenn R. Milner* and *Robert F. Berry, Jr.* on the brief, and *Mr. Milner* orally), for the petitioner.

*Michael A. Delaney*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the memorandum of law and orally), for the respondent.

LYNN, J. The petitioner, New Hampshire Independent Pharmacy Association (NHIPA), appeals an order of the Superior Court (*Smukler*, J.) granting summary judgment to the respondent, New Hampshire Insurance Department (NHID), and ruling that RSA 415:6-aa (Supp. 2012) and RSA 420-J:7-b, VIII (Supp. 2012) do not require health insurers and health benefit plans to cover 90-day prescriptions filled at retail pharmacies. We affirm.

The following facts are drawn from the record. NHIPA is a trade and advocacy association comprised of twenty-seven independently owned pharmacies in New Hampshire. NHID is an independent regulatory agency that is charged with enforcing and executing the insurance laws of New Hampshire. RSA 400-A:1 (2006); RSA 400-A:3 (Supp. 2012). RSA 415:6-aa and RSA 420-J:7-b, VIII were enacted by the legislature in 2007. *See* Laws 2007, 73:1, :2. RSA 415:6-aa provides:

> An insurer issuing or renewing accident and health insurance policies shall allow its insureds to purchase an up-to-90-day supply of covered prescription drugs on the covered person's health plan formulary at one time . . . . Nothing in this section shall be construed to limit the health plan's ability to establish co-payments, coinsurance deductibles, or other member cost shares. A pharmacy dispensing a 90-day supply of covered prescription drugs under this section shall comply with any specified terms, conditions, and price which the plan may require for pharmacies that fill 90-day prescriptions.

With parallel language, RSA 420-J:7-b, VIII provides:

> Every health benefit plan that provides prescription drug benefits shall allow its covered persons to purchase an up-to-90 day supply of covered prescription drugs on the covered person's health benefit plan formulary at one time . . . . Nothing in this paragraph shall be construed to limit the health benefit plan's ability to establish co-payments, coinsurance deductibles, or other member cost shares. A pharmacy dispensing a 90-day supply of covered prescription drugs under this paragraph shall comply with any specified terms, conditions, and price which the health benefit plan may require for pharmacies that fill 90-day prescriptions.

When these statutes first took effect, NHID interpreted them to require health benefit plans and health insurers providing prescription drug benefits to permit their insureds to purchase 90-day supplies of prescription drugs from retail pharmacies, provided that certain conditions were met. Under this construction, health insurers and health benefit plans could

not limit coverage of 90-day supplies to those filled through mail-order pharmacies. In 2010, NHID changed its position and began reading these statutes as permitting health insurers and health benefit plans to limit coverage for 90-day prescription quantities to mail-order pharmacies.

In response, NHIPA brought this action for declaratory judgment and a writ of mandamus, asking the trial court to direct NHID to enforce RSA 415:6-aa and RSA 420-J:7-b, VIII in a manner requiring health insurers and health benefit plans to cover 90-day supplies of prescription drugs filled at retail pharmacies. NHID moved for summary judgment and the trial court granted its motion, ruling that RSA 415:6-aa and RSA 420-J:7-b, VIII do not impose such a requirement on health insurers and health benefit plans. This appeal followed.

On appeal, NHIPA contends that the trial court erred in its interpretation of RSA 415:6-aa and RSA 420-J:7-b. NHIPA argues that, because the statutes plainly permit a "pharmacy" to fill 90-day prescriptions, health insurers and health benefit plans are obligated to cover such prescriptions filled at retail pharmacies. Alternatively, NHIPA argues that the statutes are ambiguous and that their legislative history reflects the legislature's intent to secure coverage of 90-day prescriptions filled at retail pharmacies. We address each argument in turn.

> In reviewing the trial court's grant of summary judgment, we consider the affidavits, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo*.

*Bates v. Vt. Mut. Ins. Co.*, 157 N.H. 391, 394 (2008) (citations omitted).

Resolution of the instant dispute requires us to interpret the statutes at issue.

> In matters of statutory construction, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We read words and phrases not in isolation, but in the context of the entire statute and statutory scheme. When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent.

*Phaneuf Funeral Home v. Little Giant Pump Co.*, 163 N.H. 727, 731 (2012) (citations omitted).

We find the language of RSA 415:6-aa and RSA 420-J:7-b, VIII to be plain and unambiguous. Both statutes require health insurers and health benefit plans, respectively, to allow covered persons to purchase an up-to-90 day supply of prescription drugs. Additionally, the statutes require a "pharmacy" dispensing a 90-day supply of prescription drugs to comply with the terms and conditions set forth by the insurer or health benefit plan. *See* RSA 415:6-aa; RSA 420-J:7-b, VIII. However, as the trial court aptly observed, "[t]he pharmacy language only places obligations on pharmacies to follow terms and conditions as set forth by insurers and health benefit plans; the statute does not obligate an insurer or health benefit plan to allow a retail pharmacy to dispense 90-day prescriptions in the first instance." In other words, although the statutes *require* health insurers and health benefit plans to provide 90-day prescription coverage, they merely *permit* — but do not require — insurers and benefit plans to allow such prescriptions to be filled at local retail pharmacies rather than through mail order pharmacies.

NHIPA's fallback position is that the statutes are ambiguous. NHIPA places great weight on the fact that, from 2007 to 2010, NHID viewed RSA 415:6-aa and RSA 420-J:7-b, VIII as requiring health insurers and health benefit plans to cover 90-day prescriptions filled at retail pharmacies, contrary to the agency's present position. NHIPA argues that NHID's own divergent interpretations of RSA 415:6-aa and RSA 420-J:7-b, VIII demonstrate the statutes' ambiguity. *See Union Leader Corp. v. N.H. Retirement Sys.*, 162 N.H. 673, 677 (2011) ("Since there is more than one reasonable interpretation of the statutory provision, we conclude that the statute is ambiguous, and we look to legislative history to aid our analysis." (quotation and brackets omitted)).

The record before us reveals neither the circumstances nor the formality attendant upon NHID's pre-2010 interpretation of RSA 415:6-aa and RSA 420-J:7-b. What does seem clear, however, is that during the 2007-2010 interval, insurers were not uniformly following the practice of covering 90-day supplies of prescription drugs that their insureds purchased from retail pharmacies; and the record contains no evidence that NHID ever pursued enforcement action against insurers to compel compliance with its then interpretation of the statutes. Indeed, NHIPA acknowledges that NHID changed its position "in 2010 in response to an inquiry from NHIPA that these laws were not being followed." In a letter to NHIPA, NHID explained the change as follows:

> The department has applied the language of [RSA 420-J:7-b, VIII] to prohibit insurance carriers from requiring mail order and eliminating a consumer's right to select where maintenance drugs are purchased. . . . Your letter prompted us to review [RSA

420-J:7-b] and its application. Based on our review, we now believe that this provision does not in fact prohibit [an insurer from requiring a covered person to use only mail-order pharmacies]. . . . The law does not state that an option to purchase a 90-day supply must be provided at a retail pharmacy. Rather, the law establishes the more general right to obtain a 90-day supply, without specifying the manner in which in [*sic*] the 90-day supply may be obtained. . . . [O]n a going forward basis, the department will not require access to both retail and mail order to satisfy the 90-day fill requirement set forth in [RSA 420-J:7-b].

██ Under these circumstances, we cannot conclude that it is arguable that the statutes impose an obligation on insurers to cover 90-day supplies of prescription drugs purchased from retail pharmacies. *See Union Leader Corp.*, 162 N.H. at 677 (for a statute to be ambiguous, it must be susceptible to "more than one reasonable interpretation" (quotation omitted)). That being the case, NHID's misinterpretation of the statutes cannot alter their plain meaning. *State Employees' Assoc. v. State*, 127 N.H. 565, 569 (1986) ("The meaning of the statutory section in issue here is not doubtful, and erroneous administrative practice *for nine years* cannot change its plain meaning." (emphasis added)). For this reason, we find it unnecessary to examine the statutes' legislative history. *Pennelli v. Town of Pelham*, 148 N.H. 365, 368 (2002) ("We do not consider legislative history to construe a statute . . . which is clear on its face.").

Based on the foregoing, we affirm the trial court's decision. Of course, if the legislature did not intend this interpretation of RSA 415:6-aa and RSA 420-J:7-b, VIII, it is free to amend the statutes as it sees fit. *See State v. Marshall*, 162 N.H. 657, 669 (2011).

*Affirmed.*

HICKS, CONBOY and BASSETT, JJ., concurred.