9th Circuit Court – Manchester District Division
No. 2012-823

## THE STATE OF NEW HAMPSHIRE

v.

## ORIOL DOR

Argued: May 9, 2013
Opinion Issued: August 7, 2013

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*James B. Reis*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. This case comes before us on an interlocutory transfer without ruling from the 9th Circuit Court — Manchester District Division (*Michael*, J.). *See* SUP. CT. R. 9. The interlocutory transfer poses one question: "Does the definition of a 'loaded pistol or revolver' [under RSA 159:4 (2002)] encompass . . . a firearm with no cartridge in the firearm, and no magazine in the magazine well[,] but with a loaded magazine located next to it and easily accessible?" We answer the question in the negative and remand.

I

The following facts are drawn from the interlocutory transfer statement. *See In re C.M.*, 163 N.H. 768, 770 (2012). On May 8, 2012, police searched the defendant's vehicle and found a .40 caliber semi-automatic pistol adjacent to a loaded magazine in the vehicle's glove compartment. The pistol did not have a cartridge in the chamber or a magazine in the magazine well.

The State charged the defendant with a class A misdemeanor for "knowingly carry[ing] a loaded pistol as defined in RSA 159:4 in a vehicle without a valid license . . . ." The defendant moved to dismiss, arguing that "[t]he firearm at issue was not loaded and therefore no license was required and no crime was committed." The trial court found RSA 159:4 "potentially ambiguous" and transferred the question now before us.

## II

RSA 159:4 provides, in pertinent part:

> No person shall carry a loaded pistol or revolver in any vehicle or concealed upon his person, except in his dwelling, house or place of business, without a valid license . . . . A loaded pistol or revolver shall include any pistol or revolver *with* a magazine, cylinder, chamber or clip in which there are loaded cartridges.

(Emphasis added.)

The defendant argues that "with" in the second sentence should be interpreted narrowly as "joined to," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2626 (unabridged ed. 2002), so that a "loaded pistol or revolver" encompasses only a firearm that contains one or more cartridges. The State counters that "with" should be interpreted broadly as "denoting nearness, agreement, or connection," WEBSTER'S NEW DICTIONARY AND THESAURUS 625 (1990), so that a "loaded pistol or revolver" encompasses a firearm that contains no cartridges but is located near a loaded magazine or clip. Although the State's reading of RSA 159:4 is plausible, we conclude that the only reasonable construction of the statute is the one offered by the defendant.

The interpretation of a statute is a question of law, which we review *de novo*. *State v. Lathrop*, 164 N.H. 468, 469 (2012). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Town of Carroll v. Rines*, 164 N.H. 523, 528 (2013). When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *State v. Matton*, 163 N.H. 411, 412 (2012). We do not read words or phrases in isolation, but in the context of the entire statutory scheme. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* We will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Evans v. J Four Realty*, 164 N.H. 570, 572 (2013).

■ The first sentence of RSA 159:4 prohibits a person from carrying a "loaded" pistol or revolver in any vehicle without a valid license. As pertinent here, "loaded" is defined as "*containing* an explosive charge." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1326 (emphasis added). "Loaded" is also the past participle of the verb "load," which means "to put a load on or in a carrier, device, machine, or container; [specifically] *to insert the charge or cartridge in the chamber of a firearm.*" *Id.* at 1325 (emphasis added). Based on these definitions, a "loaded" pistol

or revolver may mean a pistol or revolver containing a cartridge in the chamber, *see id.*, or, more broadly, a pistol or revolver containing a cartridge in any position from which it can be fired, *see id.* at 1326; *People v. Clark*, 53 Cal. Rptr. 2d 99, 102 (Ct. App. 1996).

We conclude the legislature intended the second sentence of RSA 159:4 to clarify that "loaded" should be defined according to the broader of the two accepted meanings above. Therefore, a "loaded pistol or revolver" means not only a pistol or revolver that contains a cartridge in the chamber, but also a pistol or revolver *containing* a cylinder, magazine, or clip with a cartridge that can be discharged through the normal operation of the firearm. This reading is consistent with the common and approved usage of "loaded." We aim to preserve the common and approved usage of a word "unless from the statute it appears a different meaning was intended." *Phaneuf Funeral Home v. Little Giant Pump Co.*, 163 N.H. 727, 731 (2012).

The State argues that the meaning of "loaded" should be expanded further to include a pistol or revolver that does not contain any cartridges but that is located near a detachable magazine or clip that contains cartridges. Those jurisdictions that have defined "loaded" more broadly than the common meaning — *i.e.*, as encompassing firearms "near" ammunition — have done so explicitly. *See, e.g.*, N.Y. Penal Law § 265.00 (15) (2013) (" 'Loaded firearm' means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm."); 18 Pa. Cons. Stat. § 6102 (2012) ("In the case of a firearm which utilizes a detachable magazine, [loaded] shall mean a magazine suitable for use in said firearm which magazine contains such ammunition and has been inserted in the firearm or is in the same container or, where the container has multiple compartments, the same compartment thereof as the firearm."); Ohio Rev. Code Ann. § 2923.16(K)(5)(a) (West Supp. 2013) (defining "unloaded" for purposes of a statute regulating the handling of firearms in motor vehicles). In contrast, RSA 159:4 provides no indication that the legislature intended "loaded" to be defined so broadly as to encompass pistols or revolvers "near" ammunition. Therefore, we conclude the legislature did not intend this reading. *Cf. Evans*, 164 N.H. at 572 ("[We will not] add language that the legislature did not see fit to include.").

We note that RSA 207:7, II (2011) could be read to provide some support for the State's position. The statute is located under the "General Provisions as to Fish and Game" chapter, and states, in pertinent part: "No person shall have or carry, in or on a motor vehicle, OHRV, snowmobile, or aircraft, whether moving or stationary, a cocked crossbow, a loaded rifle or loaded shotgun, or a rifle or shotgun with a cartridge in a magazine or clip

*attached to the gun."* RSA 207:7, II (emphasis added).[1] Because RSA 207:7, II includes the phrase "attached to the gun," the absence of such language in RSA 159:4 arguably supports the inference that the legislature intended RSA 159:4 to have a broader application than RSA 207:7, II. *See In re Guardianship of Williams,* 159 N.H. 318, 323 (2009) ("[W]here the legislature uses different language in related statutes, we assume that the legislature intended something different." (emphasis omitted)). That statute, however, also supports a contrary inference. The inclusion of the last clause in RSA 207:7, II arguably shows that the legislature assumed a rifle or shotgun with a cartridge in a magazine or clip attached to the gun (rather than in the chamber) would not qualify as a "loaded" rifle or shotgun (otherwise there would have been no need to include that clause). Given that the legislature did not regard a firearm with a cartridge in an *attached* magazine or clip as "loaded," it seems highly unlikely that the legislature intended by use of the word "with" in RSA 159:4 to include as "loaded" a broader category of firearms, *i.e.,* those located near, but unattached to, a clip or magazine containing a cartridge. In light of the conflicting inferences that may be drawn from RSA 207:7, II, we are not persuaded that this statute is indicative of legislative intent to depart from the common meaning of the term "loaded" as used in RSA 159:4. *See Phaneuf,* 163 N.H. at 731 (we aim to preserve the common and approved usage of a word "unless from the statute it appears a different meaning was intended"); *cf. Clark,* 53 Cal. Rptr. 2d at 103-04 (interpreting "loaded" according to its common meaning in a section of the Health and Safety Code even though a section of the Penal Code contained a broader definition of the word).

Furthermore, we reject the State's reading of RSA 159:4 because it could render the statute unconstitutionally vague. *See* N.H. CONST. pt. I, art. 15; *State v. Ploof,* 162 N.H. 609, 620 (2011) ("It is a basic principle of statutory construction that a legislative enactment will be construed to avoid conflict with constitutional rights wherever reasonably possible." (quotation omitted)); *State v. Pratte,* 158 N.H. 45, 48 (2008) ("The underlying principle of vagueness is that no person should be held criminally responsible for conduct which he or she could not reasonably understand to be proscribed." (quotation omitted)). A criminal statute is void for vagueness when it forbids or requires the doing of an act in terms so vague that

---

[1] In *State v. Shaw,* 102 N.H. 498 (1960), we held that, as amended in 1947 and 1949, the conduct proscribed by RSA 207:7, II is not limited to constituting "evidence of a violation of the gaming laws," but also constitutes "a prohibition against having or carrying a loaded gun in certain vehicles, whether moving or stationary, or used for hunting or otherwise." *Shaw,* 102 N.H. at 500.

men of ordinary intelligence must necessarily guess at its meaning and differ as to its application. *State v. Wong*, 125 N.H. 610, 621 (1984). Under the State's reading, a person of ordinary intelligence would have to guess at how "near" a pistol or revolver must be to a loaded magazine or clip to constitute a violation of RSA 159:4. In contrast, interpreting a "loaded pistol or revolver" as a pistol or revolver *containing* a cartridge in any position from which it can be fired eliminates the uncertainty: a pistol or revolver either contains a cartridge in such a position or it does not.

The State argues that even if its reading of RSA 159:4 would render the statute unconstitutionally vague, we may apply "judicial narrowing" to clarify any vagueness. *See Bleiler v. Chief, Dover Police Dep't*, 155 N.H. 693, 702-03 (2007) (applying "judicial narrowing" to avoid an unconstitutionally vague reading of a statute). Because we reject the State's reading, we do not reach this issue. However, even if we were to adopt the State's reading, we still would decline to apply "judicial narrowing." In *Bleiler*, we rejected the defendant's argument that RSA 159:6-b (2002) was unconstitutionally vague because it permitted the issuing authority to suspend or revoke a license to carry a loaded pistol or revolver for "just cause." *Id.* at 701-03. Read in the context of the entire statutory scheme, we reasoned that the phrase "just cause" "refer[red] to a licensee's use of a weapon for an improper purpose or to the licensee's status as an unsuitable person." *Id.* at 702. First, we interpreted "improper purpose" with reference to a statute listing proper purposes. *Id.* Then, we applied judicial narrowing to the term "suitable person" by drawing upon statutes and case law describing individuals who are deemed *un*suitable to carry a concealed weapon. *Id.* at 702-03. We concluded that the statute "gives notice to a person of ordinary intelligence of the conduct that may result in the revocation of his or her license to carry loaded weapons concealed." *Id.* at 703.

▉ Here, there is no guidance in either the broader statutory scheme or established case law about how "near" a pistol or revolver would have to be to a loaded magazine or clip for it to be considered "loaded."[2] *See* RSA ch. 159. Therefore, as the State seems to concede, in order to clarify the substantial uncertainty resulting from its reading of RSA 159:4, we would effectively have to add language similar to that contained in one or more of the out-of-state statutes cited earlier in this opinion. This would go beyond judicial narrowing — rewriting statutes is a task reserved for the legislature. *See Evans*, 164 N.H. at 572 ("[We will not] add language that the

---

[2] We note that, unlike RSA 159:6-b, the regulatory statute at issue in *Bleiler*, RSA 159:4 establishes a criminal offense.

legislature did not see fit to include."); *State v. Lamy*, 158 N.H. 511, 521 (2009) ("[I]t is the province of the legislature to enact laws defining crimes . . . ." (quotation omitted)).

At oral argument, the State cited *United States v. Rodriguez*, 841 F. Supp. 79 (E.D.N.Y. 1994), *aff'd*, 53 F.3d 545 (2d Cir. 1995), to support its reading of RSA 159:4. In *Rodriguez*, police searched the defendant's apartment and found a large cache of firearms and drugs. *Id.* at 80-81. Expecting to adduce evidence at trial to demonstrate that a pistol and silencer were found, unattached, in a briefcase, the government charged the defendant with violating 18 U.S.C. § 924(c)(1) (1993), which provided in pertinent part: "Whoever, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years, and if the firearm . . . is *equipped* with a firearm silencer . . . to imprisonment for thirty years." *Id.* at 81 (emphasis added). The court determined that the word "equipped" in the statute did not mean "attached to," but, rather, "stand[ing] in a relation one to the other." *Id.* at 83. Thus, the pistol was "equipped" with the silencer because "they [could] efficiently be pressed into joint service to meet a particular need." *Id.* at 84.

The State's reliance on *Rodriguez* is misplaced. First, the *Rodriguez* court drew support for its broad construction of the term "equipped" on then-existing precedent giving a broad construction to other terms of 18 U.S.C. § 924(c)(1), including the term "use." Those precedents, however, were either overruled or at least significantly limited by the Supreme Court's subsequent decision in *Bailey v. United States*, 516 U.S. 137 (1995), which gave "use" a narrow construction.[3] *See United States v. Thompson*, 82 F.3d 849, 852-53 (9th Cir. 1996).

██ More fundamentally, silencers are categorized as "dangerous and unusual weapons" that the government can prohibit for individual use. *United States v. Perkins*, 4:08CR3064, 2008 WL 4372821, at *4 (D. Neb. 2008) (quotation omitted); *see* 26 U.S.C. § 5845(a) (2006) (grouping silencers in the same category as other highly regulated firearms such as machineguns and short-barreled rifles and shotguns); 26 U.S.C. §§ 5861(d), 5871 (2006) (receiving or possessing an unregistered silencer is a federal crime subject to penalty of up to ten years imprisonment and $10,000 fine). "[A] silencer is practically of no use except for a criminal purpose. . . . Possession of a silencer thus demonstrates a disregard of law and a

---

[3] *Bailey* rejected the theory that mere "proximity and accessibility" of a firearm is sufficient to constitute "use" during a crime of violence or drug trafficking crime. *See Bailey*, 516 U.S. at 144-46. Instead, the Court held that "use" under the statute required "active employment" of the firearm by the defendant. *Id.* at 144. Congress subsequently amended 18 U.S.C. § 924(c) to criminalize the "possession" of a firearm "in furtherance of" a crime of violence or drug trafficking crime. *United States v. Lomax*, 293 F.3d 701, 704 (4th Cir. 2002).

substantial risk of improper physical force." *United States v. Huffhines*, 967 F.2d 314, 321 (9th Cir. 1992); *see also United States v. Schrum*, 346 F. Supp. 537, 539 (E.D. Va. 1972) (describing a silencer as a "gangster-type" weapon). By contrast, in this country, ownership and use of standard pistols and revolvers is not only widespread and generally accepted as lawful, *see Staples v. United States*, 511 U.S. 600, 612 (1994), but also implicates constitutional rights, *see* U.S. CONST. amends. II, XIV;[4] N.H. CONST. pt. I, art. 2-a. For these reasons, we interpret RSA 159:4 narrowly so as to set forth a clear demarcation between that conduct which is allowed and that which is prohibited. *Cf. Staples*, 511 U.S. at 614 ("If we were to accept as a general rule the Government's suggestion that dangerous and regulated items place their owners under an obligation to inquire at their peril into compliance with regulations, we would undoubtedly reach some untoward results."); *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) ("[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.").

 Finally, we acknowledge the State's point that its reading of RSA 159:4 arguably advances the goal of the statute – protecting public safety – to a greater extent than our construction. But, as the Supreme Court has aptly observed, "it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (per curiam); *see Brown v. Secretary of Health & Human Services*, 46 F.3d 102, 108 (1st Cir. 1995).

 Accordingly, we hold that in order for a pistol or revolver to be considered "loaded" within the meaning of RSA 159:4, the pistol or revolver must *contain* a cartridge in the chamber or must *contain* a magazine, cylinder, or clip inserted in or otherwise adjoined to the firearm such that the firearm can be discharged through normal operation. Of course, if the legislature disagrees with our interpretation of RSA 159:4, it is free,

---

[4] *See District of Columbia v. Heller*, 554 U.S. 570, 635-36 (2008); *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3026 (2010); *see also Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("What we know from [*Heller* and *McDonald*] is that Second Amendment guarantees are at their zenith within the home. What we do not know is the scope of that right beyond the home and the standards for determining when and how the right can be regulated by a government." (citation omitted)); *Hightower v. City of Boston*, 693 F.3d 61, 73 (1st Cir. 2012) (concluding that "the government may regulate the carrying of concealed weapons outside of the home"); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (stating that "[t]he Supreme Court has decided that the [Second Amendment] confers a right to bear arms for self-defense, which is as important outside the home as inside").

subject to constitutional limitations, to amend the statute. *See N.H. Indep. Pharmacy Assoc. v. N.H. Ins. Dep't*, 164 N.H. 480, 484 (2012).

*Remanded.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.